UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


BOUNTHAVEE NERASIN, ) CASE NO. 4:11 CV1190
)
    Petitioner, ) JUDGE DONALD C. NUGENT
)
vs. )
) MEMORANDUM OF OPINION
) AND ORDER
HARLEY G. LAPPIN, *et al.*, )
)
    Respondents. )

    Before the Court is *pro se* Petitioner Bounthavee Nerasin's above-captioned habeas corpus action pursuant to 28 U.S.C. § 2241. He names Harley G. Lappin, Director of the Bureau of Prisons (BOP), Corrections Corporation of America ("CCA") President & CEO John D. Ferguson, and Warden Roddie Rushing at the Northeast Ohio Correctional Center (N.E.O.C.C.)[1] in Youngstown, Ohio as Respondents. Petitioner, who is incarcerated at N.E.O.C.C., asserts he was impermissibly transferred to a N.E.O.C.C. on the basis of national origin in violation of his Fifth and Fourteenth Amendment rights under the Constitution. For the reasons set forth below, the Petition

---

[1] N.E.O.C.C. is one of several privately-operated corrections companies that house 15 percent of the BOP's inmate population.

is denied.

*Background*

Petitioner pled guilty to illegal use of a communication device in violation of 21 U.S.C. § 843. *See United States v. Nerasin*, No. 2:08cv0389 (E.D. CA 2008). He was sentenced to 48 months imprisonment. He was relinquished to the custody of the BOP, which classified him as a low security inmate on or about August 25, 2009. On the same date, the BOP transferred him to N.E.O.C.C. allegedly based on his nationality, country of origin and immigration status. Petitioner describes himself as a non-citizen resident of the United States from Laos.

Petitioner alleges N.E.O.C.C. staff advised him that he was transferred to N.E.O.C.C. under on a contractual arrangement between C.C.A. and the BOP, whereby prison transfers were authorized based on national origin, immigration status and low security re-classification. Petitioner asserts this is a violation of his Constitutional rights.

As a result of his transfer, Petitioner raises two grounds for relief; namely, (1) his transfer and "segregation" based on nationality violate the 5th and 14th Amendments of the Constitution; and (2) the contract between C.C.A. and the BOP is illegal, unconstitutional and invalid because it permits unlawful housing of prisoners based on nationality. For relief, he seeks immediate transfer to a BOP facility, an order from this Court directing that all prisoners be treated the same, regardless of nationality or immigrant status and, finally, to declare the CCA/BOP contract null and void.

*Analysis*

Petitioner claims the Respondents are violation of the BOP policy against discrimination set forth in 28 C.F.R. § 551.90, the Fifth and Fourteenth Amendments of the

Constitution, 18 U.S.C. § 242, and 18 U.S.C. § 4001. This is based on his assertion that his immigrant status, nationality, country of origin and race caused the Respondents to treat him differently than other low security prisoners. Moreover, the contract between CCA and the BOP, allegedly allowed him to be placed at N.E.O.C.C. and "segregated" from low security inmates who are United States citizens.

Under 18 U.S.C. § 242, Petitioner claims he is entitled to protection from any unconstitutional action taken under color of law.[2] In addition, he maintains that the Fifth and Fourteenth Amendments entitle low security, non-citizen inmates to the same treatment as low security inmates who are citizens of the United States. He cites both a Supreme Court case and District Court of the Virgin Islands decision to support his assertion that prisoner segregation by race, national origin or immigrant status violates the Constitution. *See Johnson v. California*, 543 U.S. 499 (2005); *Sailer v. Tonkin*, 356 F. Supp. 72 (D.C. VI 1973).[3] Unlike Petitioner's pleading,

---

[2]This is a statute which criminalizes conspiracy to deprive persons of their rights secured by the Constitution or laws of the United States, and the deprivation of rights under color of law. *See* 18 U.S.C. § 242. Because this criminal statute does not provide any basis for civil liability, Petitioner cannot state a claim upon which relief may be granted under it. *See Krajicek v. Justin*, No. 98-1249, 1999 WL 195734 at *1 (6th Cir. Mar.23, 1999), *cert. denied*, 528 U.S. 1046 (1999)(holding that §§ 241-242 do not provide a basis for civil liability); *Owens v. Johnson*, No. 98-1728, 1999 WL 777453 at *1 (6th Cir. Sept.16, 1999)(holding that § 242 does not provide a private cause of action).

[3]*Johnson*, which involved an African-American inmate who asserted a constitutional challenge to an unwritten policy of placing new or transferred prisoners based on race, was raised as a 42 U.S.C. §§ 1981 and 1983 equal-protection action against the corrections officials, not in a habeas petition. *Tonkin* is even less relevant. The action was brought to test the constitutionality of a provision under the Criminal Victims Compensation Act. The petitioner challenged the statute's bar against non-resident aliens, among other classes of persons, from enjoying the benefits offered under the Act to victims who have sustained injuries as a result of criminal acts in the Virgin Islands. *Tonkin*, 356 F. Supp. at 73.

(continued...)

however, neither *Johnson* nor *Tonkin* was filed as a habeas petition.

Petitioner concludes his Petition with a general statement that "[a]liens are denied of [sic] beneficial incentives such as Release preparation Program, Drug and alcohol abuse program, Pre-release community corrections Center Half-way-house program pursuant to [BOP] . . . policy and procedure, the Second Chance Act . . . and 18 U.S.C. § 3624(c)(2)." (Pet. at 11.)  There is no allegation, however, that Petitioner was eligible for any of these programs or that his request to participate was denied by the BOP.

In his "Conclusion" paragraph, Petitioner draws the Court's attention to *Thanthavongsa v. Lappin*, No. 09-3243, slip op. at 2 (6th Cir. Apr. 25, 2011), a recently unpublished opinion issued by the Sixth Circuit Court of Appeals.  In *Thanthavongsa*, the Sixth Circuit held that the district court erred in holding that an alien could not raise an equal protection claim in a habeas petition.  The Sixth Circuit stated: "Thanthavongsa alleged more than a simple prison transfer, and his claim is cognizable under § 2241. Although the respondents claim that *Jalili* [925 F.2d 889 (6th Cir. 1991)] has been called into doubt, we are bound to apply controlling precedent unless that precedent is overruled by the Supreme Court or by this court sitting *en banc*." *Id.*(citation omitted).

*Federal Habeas Petitions*
*28 U.S.C. § 2241*

Section 2241 in Title 28 of the United States Code provides, in relevant part, that:

> (c) The writ of habeas corpus shall not extend to a prisoner unless–
>
> > (1) He is in custody under or by color of the authority of the United States or is committed for trial before

---

$^{3}$(...continued)

>some court thereof; or

>(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

>(3) He is in custody in violation of the Constitution or laws or treaties of the United States;

28 U.S.C. § 2241(c). The underlying theme of the statute clearly extends relief to prisoner "custody" challenges. Thus, a habeas corpus petition is the proper mechanism for a prisoner to challenge the "legality or duration" of his or her confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The *Preiser* court explained that

>It is clear, not only from the language of §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the *traditional function of the writ is to secure release from illegal custody*. By the end of the 16th century, there were in England several forms of habeas corpus, of which the most important and the only one with which we are here concerned was habeas corpus ad subjiciendum-the writ used to 'inquir(e) into illegal detention with a view to an order releasing the petitioner.' *Fay v. Noia*, 372 U.S. 391, 399 n. 5, 83 S. Ct. 822, 827, 9 L. Ed.2d 837 (1963)

*Id.* (emphasis added). The Supreme Court recently reiterated this axiom of law in *Nelson v. Campbell*, 541 U.S. 637 (2004), wherein the Court explained that "constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that [habeas corpus] core and may be brought pursuant to § 1983 in the first instance."*Id.* at 643 (citations omitted). Within months from *Nelson*, the Court again noted that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be

-5-

presented in a § 1983 action." *Muhammed v. Close*, 540 U.S. 749, 750(2004).

Thus, for claims which request relief based on the circumstances of confinement, a prisoner may file a civil rights complaint pursuant to 42 U.S.C. § 1983, or *Bivens*.[4] What sets a habeas petition apart from a civil rights action is the habeas petitioner's declaration that he or she is entitled to be released immediately, or at least sooner than his scheduled release date. While a habeas petitioner may argue he is being held in violation of the Constitution, such a claim would not attack the conditions of confinement as the sole basis for habeas relief. Thus, absent an assertion that the prisoner's confinement is itself unlawful, or that he is being confined beyond the duration allowed by law or the Constitution, the writ of habeas corpus cannot extend to a prisoner, including the Petitioner.

Nothing in the Petition before this Court raises the argument that the prisoner should be released immediately, or sooner than his scheduled date. Instead, Petitioner argues he is being held at N.E.O.C.C. is in violation of the Fifth and Fourteenth Amendments and seeks to continue his term of imprisonment in a different facility. Petitioner explicitly moves this Court to:

> Order the respondents to immediately transfer the petitioner to a Federal Bureau of Prisons facility in accordance with the petitioner's low security classification status level, and sentencing court recommendation (2) Order the Federal Bureau of Prisons to treat the petitioner similar to all other FBOP INMATES regardless of petitioner's national origin, or immigration status, and to afford said petitioner all the same privileges and benefits afforded to the United States citizen inmates, in accordance with . . . the Due Process and Equal Protection Clause of the 5th and 14th amendments of the

---

[4]The case involves prisoners who assert that a federal employee violated his constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

> United States Constitution and . . . ; (3) Issue an Order declaring the contract between FBOP and CCA illegal, unconstitutional.

(Pet. at 13.)[5] He is challenging the length of time he has been or will be confined. This Petition is an attack on the BOP's decision to transfer him to N.E.O.C.C., allegedly based on his nationality and status as an immigrant. If this were a challenge to his confinement, his prayer for relief would ultimately affect the length or duration of his term of confinement. This is true with regard to requests for immediate release, as well as challenges to the manner in which the BOP is executing an inmate's sentence.

Petitioner asserts this Court has habeas jurisdiction over claims that challenge the manner, condition and location of his confinement. The only case Petitioner cites that remotely supports his theory is "*Thompson v. Choinski*, Docket #04-5079-pr, WL 1969652 (2nd Cir. Decided May 8, 2008)"[6] (Pet. at 3.) *Choinski* is not, however, controlling law. This Court is bound to first follow precedent of the Supreme Court. *See Daugherty v. Campbell*, 935 F.2d 780, 784 (6th

---

[5]Petitioner also makes general statements regarding aliens and their rights to participate in certain prison programs. If he were to challenge the denial of a request to participate in an early release program, it is conceivable that he could file a habeas petition after exhausting his administrative remedies. *See Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981) (federal prisoner must first exhaust his available remedies before filing a § 2241 petition for habeas corpus relief). The issue of the denial of such a request is not before the Court at this time, however.

[6]The correct citation is *Thompson v. Choinski*, 525 F.3d 205 (2d Cir. 2008), *petition for cert. filed* ___U.S.L.W.___ (U.S. Nov 12, 2008)(No. 08-7358). In this case the petitioner, following a disciplinary proceeding, lost good-time credits in addition to receiving assignment to a high-security status. It was the loss of good-time credits, however, that made it a proper § 2241 challenge. *See e.g. Thorn v. Shartle*, No. 4:10 CV 1917, 2011 WL 43241, at *2 (N.D.Ohio Jan. 6, 2011) ("If a constitutional violation has resulted in the loss of good credit time, it affects the duration of a sentence, and the violation may be remedied by way of a petition for writ of habeas corpus.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974)).

Cir.1991)(noting that this court first looks to Supreme Court cases, then to Sixth Circuit cases, and finally to decisions of other circuits); *Bing ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555 (6th Cir. 2006).

The Supreme Court has repeatedly explained that,"[c]hallenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus." *Hill v. McDonough*, 547 U.S. 573, 579 (2006)(quoting *Muhammad*, 540 U.S. at 750)(citing *Preiser*, 411 U.S. at 500). This is why "federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254[§ 2241 for federal prisoners], and a complaint under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983." *Muhammad*, 540 U.S. at 750. Therefore, inasmuch as the Sixth Circuit has followed the Court's consistent holding that habeas relief is designed to test the fact or duration of confinement, *Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir.2007), Petitioner's reliance on *Choinski* is unavailing. Moreover, unlike Petitioner, the prisoner in *Choinski* was also challenging the loss of Good Conduct Time.

Finally, the *Thanthavongsa* court's reliance on *Jalili* supports dismissal of this action. In *Jalili*, the defendant challenged the BOP's designation of his place of confinement by filing a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255. The Sixth Circuit held that the defendant could not challenge his place of imprisonment through a § 2255 Motion to Vacate. *See Jalili*, 925 F.2d at 893-94. Instead, the *Jalili* court considered his request as an attack on the BOP's execution of his sentence and determined that it should have been filed as a habeas petition pursuant to 28 U.S.C. §2241. What *Jalili*, and later *Capaldi v. Pontesso,*135 F.3d 1122 (6th Cir. 1998), instructed was the difference between two types of habeas corpus actions, advising prisoners to use § 2241 to attack the manner in which the BOP executed a sentence and to use § 2255 to vacate or

set aside a sentence. Both types of habeas claims ultimately affect the length or duration of a prisoner's confinement, but are distinguished, in part, by who can grant the relief requested. *See e.g.* 28 U.S.C. §2255 ("prisoner . . . may move the court which imposed the sentence to vacate . . . the sentence); 28 U.S.C. § 2241 ("[w]rits . . . may be granted . . . by the district courts . . . within their respective jurisdictions). Therefore, *Jalili* did not suggest that §2241 petitions that addressed the execution of a prisoner's sentence, did not also affect the length of the prisoner's sentence. It only noted that §2255 motions were restricted to collateral attacks on a prisoner's sentence.

The relevant discussion here is what qualifies a request as uniquely habeas. Even in *Choinski,* the prisoner was seeking to recover GCT the BOP removed as a disciplinary sanction. The fact that civil rights claims were included in his petition was not dispositive. The fact that his request for relief would affect the duration of confinement was central to his entitlement to habeas relief. Thus, habeas jurisdiction, even in cases attacking the execution of a prisoner's sentence, only attaches if the prisoner is challenging a BOP decision that ultimately affects the length of his confinement.[7] *See, e.g.*, *Terrell v. United States,* 564 F.3d 442 (6th Cir. 2009).[8] The present Petition

---

[7] As an example, prisoners may use §2241 to challenge a prison disciplinary hearing if a sanction includes the forfeiture of Good Credit Time (GCT). The Supreme Court has reasoned that sanctions which require the forfeiture of GCT will inevitably affect the duration of a prisoner's sentence; thus, giving rise to a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). It is under those circumstances that a prisoner may invoke the §2241 habeas statute to assert his entitlement to the protections of procedural due process. *Id.* at 482-84.

[8] The Sixth Circuit explained:

> Only for claims falling in the "core" of habeas, that is those necessarily implicating the fact or duration of confinement, does habeas provide the exclusive action; otherwise, there exist claims that can both be brought under habeas and §

(continued...)

does not contain such an attack.

*Conclusion*

Based on the foregoing, the Petition is denied pursuant to 28 U.S.C. § 2243. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

    /s/Donald C. Nugent 11/3/11
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

---

[8](...continued)
1983, or an equivalent civil action.